Haight, J.
This action was brought upon a parol agreement for insurance. The court has found as facts that on or before the 5th day of May, 1885, the plaintiff saw Dailey, one of the defendant’s agents, and asked him for insurance on his store and stock and what rate he would give, and Dailey said “he would start at one and a half per cent, and did not think he would have to go higher than two and a half per cent.” The plaintiff then said to Dailey he could insure him $2,000 on the building. Dailey said he would like to have plaintiff put in some stock, as it would help a little in the rates—the insurance companies would view it a little better. Plaintiff then told Dailey he could put in $1,000 on the stock, and Dailey said he would insure plaintiff for $3,000.
That Dailey & White wrote a policy in the Continental Fire Insurance Company, on the 5th of May, 1885, for $1,000 on the building, and $500 on the stock, which was subsequently canceled by direction of that company after running about seven days, whereupon Dailey & White immediately wrote a policy in the Glens Falls Insurance Company for $1,000 on the building, and $500 on the stock, which policy continued some six days, when it was canceled by order of the company before May 18th, 1885, and then another policy was written in the German American Fire Insurance Company on the same property. This last policy was dated May 23d, 1885, and was ordered canceled *484 by the company May 27th, 1885, and on the next day, May 28th, Dailey & White in place of it made out a policy of defendant which is not dated, but it was countersigned jby them May 28th, 1885.
The said last mentioned policy recites and undertakes that in consideration of the receipt of $37.50, and the representations, covenants and warranties of the insured, the defendant insured him against loss or damage by fire to the amount of $1,500, viz.: $1,000 on his new-frame store building and foundation wall; $500 on his stock (describing it and its location); loss, if any, payable to Mrs. A 0 Smith, as her interest might appear as mortgagee. Said policy provided “$1,500 other concurrent insurance permitted.” The said policy provided that the defendant agreed to make good to the plaintiff all such immediate loss not exceeding the sums insured, on the interest of the insured, except as in said policy provided, as should happen from the 28th day of May, 1885, at 12 o’clock at noon, to the 28th day of May, 1886, at 12 o’clock at noon. It was also provided in said policy that if the insured should have, or should thereafter make any other insurance on the property thereby insured, or any part thereof, without the- consent of the defendant written on the policy, the policy should be void. It also provided in said policy, that defendant should not be hable by virtue of said policy until the premium be paid, or a valid receipt given therefor, duly impressed with the seal of the company, and it was also provided in said policy that it was understood and agreed, that said policy was made and accepted in reference to the foregoing terms and conditions, which were declared to be a part of the contract and that they were to be used and resorted to in order to determine the rights and obligations of the parties thereto in all cases not therein otherwise specially provided in writing. The building and stock were destroyed by fire on the morning of Sunday, May 31st, 1885, and on Monday, June 1st, 1885, after the fire, the plaintiff paid the premium upon the policy, and the same was delivered to him by the defendant’s agent, who had full knowledge that the fire had taken place.
The first question presented is as to whether or not there was an oral contract to insure. It will be observed that the conversation as found by the court as having taken place between Dailey and the plaintiff, is to the effect that he would start the rate at one and one-half per cent., and did not think he would have to go higher than two and one-half per cent., thus indicating that the agent did not assume to take the responsibility of fixing the rate himself, but leaving it to be understood that he would make application to the companies that he represented for insurance, *485 and that he would get the rate as low as he could. This is apparent from what subsequently followed, for it appears that he tried by writing policies in different companies which were rejected, until finally he wrote the policy in defendant company the day before the fire, and notified that company on the evening of that day, who on receiving the notice declined the risk.
True, the plaintiff further testified to another interview with Dailey, on the 18th or 19th of May, in which he states that Dailey told him he had established a rate at two and one-half per cent for his insurance, and that the witness replied to him “all right;” but the difficulty is the court, on request, refused to find that this conversation took place. Had this been found as a fact, a different question would have been presented. Without it, it is apparent that the contract was not completed, but was still held open for the agent to ascertain from the companies what rate he could give to the plaintiff on the property he sought to have insured. This interview with Dailey on the 18th or 19th of May is only testified to by the plaintiff, a party in interest; Dailey was not questioned in reference to it. The credibility of a party is always a question for the trial court, and the appellate court cannot say that the trial court should have believed the unsupported testimony of a party, and for that reason the finding is against the weight of evidence.
Again, in the making of a contract, the minds of the parties must meet. The agents of the defendant, with whom the contract is alleged to have been made, filled out a policy of the defendant, leaving in blank the date, and on the Monday after the fire this policy was accepted by the plaintiff and the premium paid. In the alleged oral agreement nothing appears to have been said as to the company or the conditions of the policy that should be issued, but the company may be understood as one represented by the agents making the agreement and the conditions those usually embraced in insurance company pohcies doing that class of business. At least, when the plaintiff paid and accepted the policy in the absence of evidence to the contrary, he must be deemed to have acquiesced in the conditions embraced therein as forming a part of the contract.
As we have seen, this policy contained the condition that if the insured should have other insurance on the property insured, or any part thereof, without the consent of the defendant written on the policy, the policy should be void. It also contained the provision that the defendant should not be hable by virtue of the policy until the premium be paid or a valid receipt given therefor, duly impressed with the seal of the company. It appeared that there was other *486 insurance to the amount of $1,000 upon the stock of goods, a part of the property embraced in the defendant’s policy, in the Imperial Fire Insurance Company, and that that insurance was disclosed to or known to have existed by the defendant, or the defendant’s agents, and the court has so found. It further appears that the premium was not p’aid until after the fire occurred, so that under the conditions of the policy there can he no recovery, and there is no evidence from which we can say that these conditions were not understood as forming a part of the oral agreement.
It follows that the judgment should be affirmed, with costs.
Smith, P. J., and Bradley, J., concur.